Second case this morning is case number 4170545, in re T.Z. For the appellant, we have Joel Wessel for the appellee, Thomas Doty. Please proceed. Thank you. May it please the court. Counsel, my name is Joel Wessel. I am with the Office of the State Appellate Defender, and I represent T.Z. T.Z.'s constitutional right to confront witnesses was violated in this case when the trial court permitted the child witness to whisper several of his answers to the court, which the court then repeated back for the parties to hear. This procedure was problematic because it denied respondent and counsel the ability to listen to the manner in which those answers were being communicated. The Illinois Supreme Court in Peek Laview, Lofton, held that the right to confront witnesses includes the right to hear and to see them as they testify. In Lofton, the trial court erected a barrier of podiums to prevent the child witness from seeing the defendant. On appeal, the Illinois Supreme Court reversed. It held that although trial counsel was able to see the witness testify and observe his demeanor, the defendant was not. And this quite possibly prejudiced the defendant by not allowing him to suggest possible lines of questioning for cross-examination. And what we have here is more serious than what happened in Lofton because not only was respondent unable to listen to those answers, but trial counsel was as well. This is important because as this court held in People v. Haddon, spoken language contains more communicative function than words. It contains paralanguage. And that includes the rate of speech, the quality of voice, stress, emphasis, intonation, silent pauses. What should it have done? What should a trial court have done? Well, there is the procedure that allows for a closed circuit television for a child witness. How long has that been in effect? I believe for at least 10 years, I believe. And so for the last 10 years, the state, or rather the court, has had a means by which, under Illinois law, to do what should have been done, could have been done in this case. Yes, I believe it may have been acted even earlier than that. It was, I believe, soon after the Maryland v. Craig decision where the U.S. Supreme Court upheld a similar provision that Maryland had. And soon after that, states across the United States began enacting similar provisions. And the problem here is that respondent and counsel were really unable to hear if, say, the witness hesitated on a word or paused long enough to call into question his memory, or he sped through his answer suggesting that he may have been coached. Mr. Wessel, let me ask you something that may be even more basic than what you're identifying as a potential flaw, and that is the words that are spoken by the trial court, how would you characterize those words? Was it testimony? Because as I understand it, there was no transcript of the child victim's testimony, just noting that the child whispered to the trial judge. How do you characterize what the trial court said in court? Was it testimony? I think it might even be hearsay. Well, you've got the trial judge, not a sworn witness. This is almost along the lines of testimony that comes by way of an interpreter. But here you have a witness whispering into the trial judge's ear, and then the trial judge indicating what the witness just said. Trial judge is the trier of fact in this case, not a witness. How do you characterize what the trial judge says when it comes to what the child witness appears to have told him? The trial court said that it's repeated everything verbatim, but... Is it testimony? I don't know if it is, because as you pointed out, the trial court was not a sworn witness. Is it evidence? It may not, in fact, be evidence. But the procedure the trial court employed for so many reasons was problematic and denied respondent a fair trial. Because of the procedure the court employed, the witness was not able to be effectively cross-examined, because how would that process even work? Would counsel ask the court how the witness may have relayed those answers? It's really... Like, the procedure is so unusual that I was not able to find any case law on this. And that's why Lofton is the most analogous situation, because in Lofton there was a visual barrier, and here there was a listening barrier. And like in Lofton, the procedure here did not allow for effective cross-examination and to ensure that what was said was reliable, if it even was evidence. And this is reviewable under both prongs of the plain error doctrine. Under SEBI, this is closely balanced. This is a contest of credibility. On one side, we have the respondent. On the other side, we have the witness. Neither version is fanciful, and neither version is supported by any sort of corroborating evidence, or, I believe the court said, extrinsic evidence. Am I to understand you're foregoing harmless error analysis in making your argument confined to plain error? I'm not, Your Honors, but I know that that was contested, and the plain error argument under SEBI is very clear, and I believe the strongest argument at this point. Because under SEBI, this is a contest of credibility, and as such, it is necessarily closely balanced. And it's also reviewable under the second prong, because this error denied respondent a fair trial. These answers, these whispered answers, were not in response to innocuous questions, such as his age or his hobbies, but the questions went to the very heart of the conduct in this case. I think Mr. Dotygie argued in his brief that the victim did make a couple of statements that were not whispered to the trial court, and that your client's counsel did not cross-examine as to those two statements. Should that be of concern to this court? I don't think so, because, Your Honor, the way our adversarial process works is that we test a witness's credibility through their entire statement. We don't have the witness get on the stand, answer questions regarding only the essential elements of the offense, and then sit down. We look to the statement and the testimony as a whole to judge that credibility. And here, we have three questions, I believe, that went to the very heart of this matter that we don't know how the witness relayed those answers. Your Honors, if there are no further questions, I would ask that this court reverse for a new trial. All right, you'll have rebuttal. Mr. Dotygie. Mr. Dotygie, you've been before this court many times and always argued effectively. What possible reason would there be for us to not grant relief to the defendant given that this is a constitutional principle espoused by the Supreme Court of the United States, a constitutional principle based on Illinois Supreme Court rulings, and a procedure that has been in existence for a decade to provide exactly the kind of child witness protection? And this trial court totally ignored it and did what was expedient and gracious during the Christmas season, I'll say. Maybe he even thought that he was doing a good thing. But he ignored what ought to be done, what the law is. The question, Your Honor, I believe would be whether or not there was a reasonable accommodation for a child witness under the Confrontation Clause. It would be if it was Santa Claus sitting on his lap whispering what he wanted for Christmas because he was bashful about saying it out loud. Well, the United States Supreme Court has indicated that there can be reasonable accommodations for a child witness. I mean, I think that's reasonably clear. Second, the purpose of the Confrontation Clause is to ensure that testimony or evidence is reliable and subject to cross-examination and testing. Thirdly, in the case at bar, the witness did testify under oath. He did testify in the spine of the presence and he was subject to cross-examination. These are factors which I would suggest support the conclusion that his testimony was reliable. Sir, I don't know if you heard my questions opposed to Mr. Wessel. How can this be characterized as testimony when there's nothing in the transcript from the child's lips, only that the child whispered into the judge's ear and certain words are then spoken by the trial judge who says this is what the child witness said? How can that be characterized as evidence? Well, obviously the trial court is, by definition, an officer of the court. So there is no basis for concluding that he would have misrepresented, misquoted. Well, so are the lawyers. Are you saying that the child could have whispered in the ear of the prosecutor and the prosecutor could have done the same thing and it still would have been evidence because the prosecutor is an officer of the court? Well, I would suggest that the trial judge in this case, the prosecutor has a defined interest. I mean, he is representing one party. Well, how about the guardian ad litem? Whisper to the guardian ad litem and the guardian ad litem repeats it. I think there is a difference between the trial court and guardian ad litem, prosecutor, defense counsel in terms of the interest and in terms of the obligation to accurately repeat testimony. An analogy, and it's by no means a perfect one, but would be something like with a translator. Translators repeat from a foreign language that cannot be understood probably by anyone else in the courtroom and that is evidence and that's similar to what occurred here. In that case, isn't there an oath that the interpreter takes prior to translating? Yes, there is. And isn't it very clear that the translator is not the trier of fact? That is, both of those points are correct. Both of those points are correct. Lastly, in the brief, I did make an analogy between what occurred in the case at Barr and hearsay. That's certainly not an exact analogy, but I suggest it may be of help in resolving this issue. Respondent contests that analogy, but I would note that the United States Supreme Court in Maryland v. Craig stated, indeed to the extent the child witness testimony may be said to be technically given out of court, although we do not so hold, these assurances of reliability and adversariness are far greater than those required for admission of hearsay testimony under the Confrontation Clause. We are therefore confident that the use of the one-way closed-circuit television procedure, where necessary to further an important state interest, does not impede upon the truth-seeking or symbolic purposes of the Confrontation Clause. As indicated, the Supreme Court drew an analogy to hearsay in determining whether or not a procedure involving a child witness violated the Confrontation Clause. Now, normally I don't use analogies in discussions with this Court. This Court usually gives us analogies, but I would like to briefly use one here. And this, of course, would be subject to certain rulings by the trial court. But assume that T.W. relates the substance of his contested statements to a police officer. The police officer then testifies at trial as to the substance of those statements. T.W. then testifies, but does not testify as to the substance of those statements. This would be, I would suggest, admissible under 115-10. However, the guarantees of reliability are substantially stronger in this case than in that case involving hearsay. The witness is subject to cross-examination, testifies in respondent's presence, and testifies under oath. So for those reasons, I would suggest that there was no violation of the Confrontation Clause. That concludes my statement. Okay, thank you, Mr. Goedeke. Is there any rebuttal? If you could, that last point Mr. Goedeke made about 115-10 hearsay, I'd like to hear the response to that. Because that logically makes sense to me. Well, to back up just for a moment, hearsay is... usually. A dying declaration, excited utterance. In contrast, trial testimony is not automatically deemed reliable and must be tested through confrontation. And that's the situation we have here. And although Maryland v. Craig, like, discussed hearsay, the procedure that the U.S. Supreme Court in Maryland v. Craig found constitutional preserved the basic elements outside the face-to-face confrontation of the Confrontation Clause, which was the ability to listen and to see the witness testify, albeit through a closed-circuit television. Regarding 115-10, the court must still... It's my understanding that for a 115-10 hearing, if the witness is available for testifying, the hearing then, or only if the witness is unavailable, Your Honors, is the hearsay allowed in. And that was not the case here because the witness was available and subject to cross-examination. What do you think would have happened to Brave Defense Counsel if he'd stood up, he or she, and said whatever they called T.Z.? Would you mind repeating some of the things that you whispered into the judge's ear? Your Honor, I'm not sure. I know that the court was very forceful in its defense of how it received the evidence. That's why I used the word brave in reference to defense counsel. It seems like the judge took on more of a protective role in this case because this was not requested by the prosecutor, but seemingly something the judge did on its own volition, on his own volition. And I would submit that he may be forceful in protecting the procedure that he enacted. I knew that I was asking for a speculative answer. Are there any further questions? Thank you, Your Honor. I don't see any. Thanks to both of you. The case is submitted. Court stands in recess.